IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WELL TAYLOR, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-1730 |
| | § | |
| AMSPEC, L.L.C., formerly known as | § | |
| AMSPEC SERVICES, L.L.C., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Six former employees sued AmSpec for overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. §207. The plaintiffs contend that AmSpec improperly calculated the regular rate of pay used to determine their overtime wages by excluding payments for work done on scheduled days off. AmSpec moved for summary judgment that it properly calculated and paid overtime, because the payments reimbursed the plaintiffs for mileage and other work expenses that were properly excluded from the regular rate and overtime calculations. The employees responded, and AmSpec replied. (Docket Entry Nos. 37, 38, 40). Based on the parties' motions and responses, the record, and the applicable law, AmSpec's motion for summary judgment is denied. A hearing is set for **June 21, 2017,** at **9:00 a.m.** to set a trial date.

The reasons for the ruling are explained below.

**I.   Background**

AmSpec is a limited liability company that inspects and analyzes petroleum-based products, storage tanks, and shipping devices. The six plaintiffs—Well Taylor, Joseph Cavallini, Sadrick Terrell, Bruce Marks, Eric Galindo, and Robert Narvaez—were employed as inspectors with AmSpec

1

between September 2012 and November 2014.[1]  Their job duties included sampling and measuring fuel shipments.  These duties required the plaintiffs to drive their personal vehicles from one work location to another during the workday.  Mr. Narvaez was based at AmSpec's Seabrook branch office.  The other five employees were based at the Houston branch office.

The plaintiffs worked hours that varied from week to week, depending on when cargo ships came and went.  AmSpec paid using the fluctuating workweek method under 29 C.F.R. §778.114.  The parties agree that *Hanson v. Camin Cargo Control, Inc.*, No. CIV. A. H-13-0027, 2015 WL 1737394 (S.D. Tex. Apr. 16, 2015) sets out the proper way to calculate the regular rate of pay under the fluctuating workweek method.  (*See* Docket Entry No. 38 at 2).  "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. §778.109.  If the plaintiffs received some overtime payment that was erroneously calculated, that amount is deducted from the half-time premium owed in order to determine the final amount of unpaid overtime due.  *Hanson*, 2015 WL 1737394, at *8.

The parties agree that the plaintiffs except Mr. Narvaez worked on days that were scheduled as days off.  The plaintiffs received payments for this work in amounts varying from $100 to $200, usually in checks separate from their regular paychecks.  The parties disagree as to whether AmSpec properly excluded these payments from the plaintiffs' regular hourly rate in calculating overtime under the fluctuating workweek method.  AmSpec contends that the payments were reimbursements for mileage and other work-related expenses, and were properly excluded from the regular rate

---

[1] Seven other plaintiffs have settled or defaulted.  (*See* Docket Entry Nos. 31, 34).

calculation under 29 U.S.C. §207(e)(2) and 29 C.F.R. §778.217(a). AmSpec moves for summary judgment on the ground that it properly excluded the payments from the regular rate calculation. Alternatively, AmSpec argues that if some part of the payments was compensation for working on scheduled days off, the remaining parts were reasonable approximations for mileage-expense reimbursements and were properly excluded from the calculation. The plaintiffs contend that ample record evidence shows that the payments were for work and had to be included in the regular rate of pay. Because it was not, the plaintiffs contend that summary judgment dismissing the overtime claim is improper.

## II. The Summary Judgment Standard

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for

3

summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

"Once the moving party [meets its initial burden], the nonmoving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *LHC Grp.*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

**III.    The Summary Judgment Evidence**

The plaintiffs rely on their deposition transcripts as well as on text messages between Mr. Galindo and AmSpec supervisor Richard Hanson. The plaintiffs contend that the documents show that they were asked to work on scheduled days off and received checks for this work as "day-off

4

pay" separate from, and in addition to, their ordinary paychecks. AmSpec itself uses the term "day-off pay" in its briefs to refer to these payments. But AmSpec contends that the term does not mean what it says: it does not reflect the true nature of the payments as expense reimbursements, not wages. (Docket Entry No. 40 at 5).

In his deposition, Mr. Galindo testified that Mr. Hanson, his supervisor, had from time to time offered him day-off pay for working on a scheduled day off, and that he received day-off pay of $175 to $200 per day. (Docket Entry No. 38-1 at 4). Mr. Galindo also testified that his day-off payments varied depending on the number of tanks he inspected on those days or on "how bad[ly AmSpec] needed help." (*Id.* at 3-4). He testified that he understood that the payments were meant to be "under the table." (*Id.* at 3) Mr. Hanson had told him to claim mileage that he had not driven so that AmSpec could give him the agreed-upon dollar amount for the day-off pay in an expense check. (*Id.* at 5).

Mr. Galindo submitted text messages between him and Mr. Hanson, including the following exchanges:

*Hanson*: Could use your help tonight if you want to make some extra money

*Galindo*: How much and how long

*Hanson*: 150  3 to 5 hours

. . .

*Hanson*: Would you be able to help us out and gauge a couple of tanks?

*Galindo*: Tonight

*Hanson*: Yes sir. They're ready

*Galindo*: Ok for 150 right

*Hanson*: Yes.

. . .

*Hanson*: Need your help tonight if you're still willing

*Hanson*: 200

*Galindo*: Ok I'll be there at about 930 10 because I have to change my brakes

*Hanson*: Ok

. . .

*Hanson*: He has a tank that needs to be opened around 2200ish. If you're able

*Galindo*: $200?

*Hanson*: For just one tank?

*Hanson*: Maybe 2 or 3

*Hanson*: For that much

*Galindo*: O I thought I was gonna be there for a couple of tanks but I can do one tank

*Hanson*: I'll go 200 for a couple of tanks this once

*Galindo*: Nah I'm ok with one tank tonight lol

. . .

*Hanson*: Again tonight?

*Galindo*: Can't do tonight

*Hanson*: K

*Hanson*: Please make sure your expenses are accurate and on time. Do NOT put day off pays

or day off mileage on there. I'll add it on there after. Jack Smith and

*Hanson*: ina will be reviewing expenses

*Galindo*: Ok will do

(Docket Entry No. 38-2 at 2, 7, 9, 10, 12).

6

Mr. Marks testified in his deposition that Mr. Hanson had offered him $100 to $200 to work on days off "if the company needed [him] bad enough." (Docket Entry No. 38-3 at 3). The day-off pay was by check. (*Id.*). Mr. Taylor similarly testified that Mr. Hanson and other managers told him that he would be paid extra money for working during scheduled days off. (Docket Entry No. 38-4 at 3). Mr. Narvaez testified to receiving checks from his supervisor, separate from his normal payroll checks, that included day-off pay as well as mileage reimbursement. (Docket Entry No. 38-5 at 3-4). Mr. Cavallini testified that his supervisor instructed him to include on his timesheet a specific amount of mileage, around 420 miles, beyond what he actually drove, so he could receive the agreed-upon $135 for day-off pay. (Docket Entry No. 38-6 at 3). Mr. Terrell also testified to receiving day-off pay in the amount of $150 to $200 from Mr. Hanson or from another supervisor in the same check as mileage reimbursements. (Docket Entry No. 38-7 at 3).

AmSpec highlights the undisputed fact that it made the payments at issue on "expense checks." (Docket Entry No. 40 at 5). AmSpec also cites the declaration of its Houston Branch Manager, Markus Carmeans, stating that each of the Houston-based plaintiffs drove an average of 133 to 167 miles per day, excluding commuting miles, compensated at $0.30 per mile. (Docket Entry No. 37 at 18). AmSpec contends that, because of the number of miles the plaintiffs drove each day, additional payments for work done on scheduled days off were reasonable as reimbursements for miles driven throughout the workweek. (Docket Entry No. 37 at 21-22). Mr. Carmeans stated in a second declaration that the "expense checks" included reimbursements for other work-related expenses, including cell phone and hotspot service, out-of-town trips, rubber boots, power inverters, printer ink, foldable wagons, dollies, and tool boxes. (Docket Entry No. 40-2 at 2). As to Mr. Narvaez, AmSpec cites the declaration of Walter Whitfield, the Seabrook Branch Manager. (Docket Entry No. 40 at 10). Mr. Whitfield stated that Mr. Narvaez was never asked to work on a scheduled

7

day off and was never offered payment for day-off work. (*Id.*) This statement contradicts Mr. Narvaez's own deposition testimony.

## IV. Analysis

The employee has the burden of proving an employer's noncompliance with the fluctuating workweek method requirements and application. *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001). If the employer properly characterizes payments as reasonable reimbursements for expenses, they are properly excluded from the plaintiffs' regular rate of pay in calculating overtime. If the payments are for work performed on scheduled days off, they must be included in the regular rate of pay. If the payments are disproportionately large in relation to the expenses, the excess amount must be included in the regular rate of pay. "The 'regular rate' at which an employee is employed . . . shall not be deemed to include . . . reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. §207(e)(2). "Payments made by the employer to cover such expenses [under 29 U.S.C. §207(e)(2)] are not included in the employee's regular rate (if the amount of the reimbursement reasonably approximates the expenses incurred)." C.F.R. §778.217(a). "[O]nly the actual or reasonably approximate amount of the expense is excludable from the regular rate. If the amount paid as 'reimbursement' is disproportionately large, the excess amount will be included in the regular rate." *Id.* at §778.217(c). The court in *Hanson* held that reimbursement for mileage beyond a reasonable approximation of actual expenses must be included in the inspectors' regular rate of pay. *Hanson*, 2015 WL 1737394, at *4.

The fact that the employer characterizes payments as expenses is not dispositive. *See Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010) (when the amount of "per diem"

varies with the amount of hours worked, the per diem payments are part of the regular rate). Expenses such as mileage reimbursement need not be tied to an employee's actual expenses in order to be a reasonable approximation. *Berry v. Excel Group, Inc.*, 288 F.3d 252, 254 (5th Cir. 2002) (a fixed per diem payment could be a reasonable approximation of travel expenses); *see also Brennan v. Padre Drilling Co.*, 359 F. Supp. 462, 466 (S.D. Tex. 1973). The United States Department of Labor Field Operation Handbook (2000), §30c15(b) states that "[t]he IRS standard business mileage rate may be used in lieu of actual costs for FLSA purposes whether or not the employee will be able to take a deduction on his or her tax return for the business use of the employee's car." *See also Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 878 (8th Cir. 2011) (DOL Handbook interpretations of DOL regulations are given deference). The IRS standard business-mileage rate during the applicable period was $0.55 to $0.56 per mile.

AmSpec reimbursed its inspectors at a rate of $0.30 during normal workdays, before switching to a fixed $36 per diem rate. (Docket Entry No. 37 at 17). AmSpec contends that because this rate was far lower than the IRS standard business mileage rate, the additional amounts—that managers and employees called "day-off pay"—were reasonable travel reimbursements added to the travel reimbursement paid for regular workdays. (*Id.*).

AmSpec's motion for summary judgment is properly granted only if undisputed evidence shows that, as a matter of law, it made the payments as a reasonable approximation of work-related expenses, including mileage, and not as payment for the plaintiffs working on their scheduled days off. The plaintiffs' testimony, if believed, shows that AmSpec offered them between $100 and $200 for working on their days off, and that the amounts varied depending on the length of time they worked or the number of tanks they inspected. The text messages Mr. Galindo submitted corroborate this account. The testimony and messages support finding AmSpec made the payments for work

done on scheduled days off, rather than for mileage or other expense reimbursements. The evidence is disputed. And it does not show that, as a matter of law, the amounts paid reasonably approximated actual expenses. Mr. Whitfield's testimony that Mr. Narvaez did not receive any day-off payments is contradicted by Mr. Narvaez's testimony. These factual disputes and the inconsistent inferences that could reasonably be drawn from the evidence preclude summary judgment.

AmSpec seeks in the alternative to have the part of the reimbursement payments the plaintiffs received that reasonably approximates the expenses they incurred excluded from the regular-rate calculation. The payments at issue, if determined to be pay for day-off work, could include some portion that reasonably approximated expenses, particularly in light of the fact that the plaintiffs received travel reimbursement for normal workdays. But the parties dispute the amounts that are properly characterized as expenses. This factual dispute precludes summary judgment as to even a part of the payments at issue.

## V. Conclusion

AmSpec's motion for summary judgment, (Docket Entry No. 37), is denied. A status and scheduling conference is set for **June 21, 2017, at 9:00 a.m.** to discuss any remaining pretrial work and to set a trial date.

SIGNED on June 7, 2017, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge